UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| METRO FIBERNET, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-3070 |
| ) | |
| AT&T, INC., CLEAR HOME, INC., ) | |
| CHAD LABONTE, and ) | |
| RYAN MARGERISON, ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Metro Fibernet, LLC ("MetroNet"), for its Complaint for Damages and Injunctive Relief against Defendants AT&T, Inc., Clear Home, Inc., Chad LaBonte, and Ryan Margerison (collectively, "Defendants"), states as follows:

### NATURE OF THE ACTION

1. MetroNet and Defendants are competitors, both in the consumer telecommunications industry. In this action, MetroNet seeks to enjoin Defendants and to recover damages from them for their practice of deceiving and stealing MetroNet's customers. Defendants' deceptive scheme was premised upon making false representations in their marketing. Defendants, in markets where MetroNet had a competitive advantage, contacted MetroNet's customers and falsely represented to MetroNet's customers that Defendants were affiliated with MetroNet. Defendants lied to MetroNet's customers, telling them that they change or acquire new services and that, if they did not, their MetroNet services would be canceled. In

actuality, Defendants sought to, and did, ensure that MetroNet's customers canceled their services with MetroNet and purchased services from Defendants. Defendants' deceptive scheme has irreparably damaged MetroNet, and despite MetroNet's notice to Defendants of the deceptive scheme, Defendants, still today, continue to carry it out.

## PARTIES

2. MetroNet is a limited liability company organized and existing under the laws of the state of Nevada, with its principal place of business in Evansville, Indiana.

3. Defendant AT&T, Inc. ("AT&T") is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Dallas, Texas.

4. Defendant Clear Home, Inc. ("Clear Home") is a corporation organized and existing under the laws of the state of Utah, with its principal place of business in Orem, Utah.

5. Defendant Chad LaBonte ("LaBonte") is a resident and citizen of Mesa, Arizona.

6. Defendant Ryan Margerison ("Margerison") is a resident and citizen of Indianapolis, Indiana.

## JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over the subject matter of this case because MetroNet's primary claim is based on federal law.

8. Further, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over MetroNet's claims arising under the laws of Indiana

9. This Court has personal jurisdiction over Defendants because they do business in Indiana and the transactions and false and misleading representations at issue in this matter occurred in Indiana.

10. Pursuant to 28 U.S.C. § 1391(b)(2) and (c), venue is proper in this district because many of the transactions and false and misleading representations at issue in this matter occurred in this District.

## FACTS COMMON TO ALL COUNTS

11. MetroNet is a telecommunications business that primarily sells internet, television, and telephone services to consumers.

12. MetroNet does business in the midwestern portion of the United States. Of its business in Indiana, it considers the markets of Huntington, Wabash, Greencastle, and Thorntown its "mature markets." In the mature markets, MetroNet had secured as customers a substantial portion of individuals who were eligible to receive its services.

13. Like MetroNet, AT&T is in the telecommunications business of selling internet, television and telephone services.

14. AT&T retains companies and individuals to market and sell its telecommunications services.

15. AT&T has retained Clear Home to market and sell its telecommunications services.

16. LaBonte and Margerison are employees or contractors of Clear Home, who, on behalf of Clear Home, market and sell the telecommunications services of AT&T in Indiana.

17. MetroNet and Defendants are competitors.

18. MetroNet and Defendants are not business affiliates.

19. Defendants desired to increase their business in MetroNet's mature markets.

20. Defendants advertised, and continue to advertise, the telecommunications services of AT&T in the mature markets and sought, and continue to seek, to sell them there.

21. Defendants were aware of MetroNet's substantial business presence in the mature markets.

22. In early 2019, Defendants, in the mature markets, began to engage in deceptive marketing and sales practices that adversely and irreparably affected, and continue to damage, MetroNet.

23. Defendants made, and continue to make, a practice of contacting and marketing to MetroNet's substantial customer base in the mature markets by and through making false representations to them.

24. On or about May 30, 2019, MetroNet – and in particular one of its regional sales managers, Mathew Paul – became aware of Defendants' deceptive scheme. MetroNet learned that Defendants, and specifically Clear Home, LaBonte,

and Margerison, had been making false representations to MetroNet's customers, which representations included but were not limited to:

    a. that Defendants were business affiliates of MetroNet;

    b. that AT&T had purchased MetroNet;

    c. that because AT&T had purchased MetroNet, the customers had to execute agreements with AT&T;

    d. that the services the customers had obtained from MetroNet had to be upgraded or that they would be terminated; and

    e. that the equipment the customers had obtained from MetroNet had to be upgraded in order to avoid cancellation of the services the customers had obtained from MetroNet.

25. In addition, MetroNet learned:

    a. that during 2019, LaBonte had been contacting MetroNet's customers in the mature markets; had falsely told them that he worked for MetroNet; had falsely told them that they could reduce their monthly MetroNet bill if they upgraded their services by executing documents he presented to them; and, if they did not upgrade their services, those services would be canceled; and

    b. that during 2019, Margerison had been contacting MetroNet's customers in the mature markets; had told them he worked for AT&T and its affiliate, DirecTV; had falsely told them that AT&T had purchased MetroNet; had told them that, as a result, they had to

upgrade the equipment they had obtained from MetroNet; had falsely told them that if they did not upgrade the equipment, their MetroNet services would be canceled.

26. Many of MetroNet's customers in the mature markets were elderly, and many were persuaded by Defendants' false representations. All-the-while maintaining the guise of affiliation with MetroNet, and based on Defendants' false representations described above, Defendants would then guide MetroNet's customers to unwittingly terminate their services with MetroNet and purchase services from Defendants.

27. For example, MetroNet learned that LaBonte, in mid-June 2019, had contacted John Prosser, who had been one of MetroNet's customers in Greencastle, Indiana since May 2014. MetroNet learned that LaBonte had falsely represented to Prosser that LaBonte worked for MetroNet and that LaBonte could reduce Prosser's monthly MetroNet bill if Prosser agreed to upgrade his services with LaBonte. MetroNet learned that LaBonte had falsely represented to Prosser that if Prosser did not upgrade the services he had, those services would be canceled. Consequently, Prosser agreed to "upgrade" his services with LaBonte. Prosser subsequently discovered that he had unwittingly signed up for services with AT&T and that he no longer had services with MetroNet. Prosser advised MetroNet that LaBonte had made similar contact with Prosser's neighbors.

28. By way of further example, MetroNet learned that Margerison, on or about June 22, 2019, had contacted Bob and Rita Sheppard, who had been MetroNet's

6

customers in Wabash, Indiana since June 2010. MetroNet learned that Margerison had falsely represented to the Sheppards that AT&T and DirecTV had purchased MetroNet and that, consequently, the Sheppards had to obtain their services from AT&T and DirecTV, not directly from MetroNet. Further, MetroNet learned, Margerison had falsely represented to the Sheppards that, *via* the change, they could receive the same services they had had with MetroNet and reduce their monthly bill. Moreover, MetroNet learned, Margerison had falsely represented to the Sheppards that if they did not that day agree to receive their services from AT&T and DirecTV, their MetroNet services would be canceled. Consequently, the Sheppards followed Margerison's lead. The Sheppards subsequently discovered that they had been deceived, and they attempted repeatedly to contact Margerison, but he did not respond to their inquiries.

29. By way of further example, MetroNet learned that LaBonte, in mid-June 2019, had contacted John Flora, who was one of MetroNet's customers in Thorntown, Indiana. MetroNet learned that LaBonte had falsely represented to Flora that LaBonte worked for MetroNet and that Flora had to take action that would alter his MetroNet account or, if he refused, his MetroNet services would be canceled. MetroNet learned that Flora had declined to alter his services as LaBonte had urged and had instructed LaBonte to leave.

30. Having learned of Defendants' deceptive scheme, on June 21, 2019, Brian Nelson of MetroNet sent cease-and-desist correspondence to Paul Southam of Clear Home. In that correspondence, Nelson stated in part:

> It has come to MetroNet's attention that your agents in the field are misrepresenting that they work for MetroNet, among other things, that have been reported on social media and to neighborhood watch groups. We have received several calls today reporting these activities, as well.
>
> We hereby demand that you cease and desist immediately from these unlawful activities or we will have little choice but to seek further action with law enforcement and in the courts to protect MetroNet.

An accurate copy of the June 21, 2019 correspondence is attached as Exhibit 1.

31. Having received MetroNet's cease-and-desist letter, Clear Home continued, including to present day, its deceptive scheme that is described herein.

32. Further, in June 2919, MetroNet notified AT&T of the deceptive scheme that is described herein. Still, Defendants' deceptive scheme has persisted.

33. AT&T did not, however, investigate the deceptive scheme that is described herein. Instead, AT&T allowed that deceptive scheme to continue, including to present day.

34. Indeed, despite MetroNet's correspondence and communication to Clear Home and AT&T, Defendants have continued to make false and misleading representations, of the sort described herein, to MetroNet's customers, and MetroNet's customers have continued to unwittingly terminate their services with MetroNet and purchase services from Defendants.

35. Defendants' perpetration of their scheme has caused, and continues to cause, substantial damage to MetroNet. MetroNet has lost customers, revenue and profit, and goodwill and has incurred expenses.

36. MetroNet's monetary losses are compounding by the day. Correspondingly, because of Defendants' deceptive scheme, MetroNet's business in

8

the mature markets continues to decrease. Plus, day-by-day, Defendants are harming MetroNet's goodwill in the mature markets by utilizing aggressive, unethical marketing and sales tactics in MetroNet's name and by stating that MetroNet is no longer its own company.

37. Further, Defendants' deceptive scheme, and their refusal, despite notice, to stop it, has caused and continues to cause MetroNet's employees to spend a great deal of time and effort attempting to control the fallout that MetroNet has experienced and continues to experience.

38. MetroNet will continue to suffer these harms while this matter is pending, and the consequences to MetroNet of those ongoing harms are irreparable. If Defendants are not forced to stop their deceptive scheme, even if MetroNet is awarded monetary damages at the end of this case, the scheme will have tarnished MetroNet's business in the mature markets, and possibly elsewhere, to a point from which it cannot recover.

## COUNT I
## THE LANHAM ACT (15 U.S.C. 1125(a)(1))

39. MetroNet incorporates its allegations above.

40. Defendants, to MetroNet's customers in the mature markets, made and continue to make false and misleading statements of fact regarding their purported relationship with MetroNet and what MetroNet's customers must do to maintain the services they obtained from MetroNet.

41. Defendants' false and misleading statements have deceived and had the tendency to deceive a substantial segment MetroNet's customers in the mature markets.

42. Defendants' false and misleading statements were and are material in that they had and continue to have an adverse effect on MetroNet's business.

43. Defendants' false and misleading statements had a substantial effect on interstate commerce.

44. MetroNet has been and will continue to be irreparably damaged by Defendants' false and misleading statements.

45. MetroNet has no adequate remedy at law to remedy Defendants' ongoing deceptive actions.

46. By and through the foregoing, Defendants have violated 15 U.S.C. § 1125(a)(1).

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

47. MetroNet incorporates its allegations above.

48. As described herein, MetroNet had valid business relationships with the customers that Defendants deceptively marketed to and corresponded with.

49. Defendants knew that MetroNet had valid business relationships with the customers that Defendants approached as described herein.

50. By its conduct described herein, Defendants tortiously interfered, and continue to tortiously interfere, with those business relationships.

51. As described *supra* in Count IV, Defendants acted criminally in their tortious interference with MetroNet's business relationships.

52. There was and is no justification for Defendants' tortious interference with MetroNet's business relationships.

53. As a direct and proximate result of Defendants' tortious interference, MetroNet has been, and continues to be, damaged as described herein.

54. MetroNet has no adequate remedy at law to remedy Defendants' ongoing tortious interference with MetroNet's business relationships.

## COUNT III
## DECEPTION UNDER IND. CODE 35-43-5-3

55. MetroNet incorporates its allegations above.

56. Defendants, with the intent to defraud MetroNet's customers, misrepresented their identity, as described herein.

57. Defendants, as described herein, disseminated to the telecommunications populace of the mature markets advertisements for telecommunications services that they knew to be false, misleading, and deceptive with the intent to promote purchases.

58. By their actions, Defendants committed the criminal act of deception as set forth under Ind. Code § 35-43-5-3.

59. As a result, Defendants are liable to MetroNet for treble damages, attorneys' fees, and costs under Ind. Code § 34-24-3.

60. MetroNet has no adequate remedy at law to remedy Defendants' ongoing criminal deception.

## PRAYER FOR RELIEF

WHEREFORE, MetroNet, by counsel, respectfully requests that this Court enter judgment in its favor and against Defendants AT&T, Clear Home, Chad LaBonte, and Ryan Margerison and award the following relief:

a. preliminarily and permanently enjoin Defendants from, as described herein, violations of the Lanham Act, tortiously interfering with contracts and business relationships, and criminal deception;

b. compensatory damages;

c. treble damages;

d. attorneys' fees;

e. costs of this action; and

f. all other just and proper relief.

Respectfully submitted,

*/s/ Jonathan A. Bont*
Jonathan A. Bont, Attorney No. 28476-49
Ian P. Goodman, Attorney No. 30645-59
Mackenzie E. Skalski, Attorney No. 34203-64
Paganelli Law Group
10401 N. Meridian St., Suite 450
Indianapolis, IN 46290
Phone:    317.550.1855
Fax:    317.569.6016
E-Mail:    jon@paganelligroup.com
        ian@paganelligroup.com
        mackenzie@paganelligroup.com

*Counsel for Plaintiff, Metro Fibernet, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent to parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Jonathan A. Bont*
Jonathan A. Bont